KAPLAN FOX & KILSHEIMER LLP
Joel B. Strauss
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
*jstrauss@kaplanfox.com*

KAPLAN FOX & KILSHEIMER LLP
William J. Pinilis
160 Morris Street
Morristown, NJ 07960
Telephone: 973-656-0222
Facsimile: 973-401-1114
*wpinilis@kaplanfox.com*

KAPLAN FOX & KILSHEIMER LLP
Laurence D. King (*pro hac vice* forthcoming)
Matthew B. George (*pro hac vice* forthcoming)
Clarissa R. Olivares (*pro hac vice* forthcoming)
Walter B. Howe (*pro hac vice* forthcoming)
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
*lking@kaplanfox.com*
*mgeorge@kaplanfox.com*
*colivares@kaplanfox.com*
*whowe@kaplanfox.com*

*Attorneys for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**ROBERT SUMRELL,** individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

**JAGUAR LAND ROVER NORTH AMERICA, LLC,**

Defendant.

Case No. 2:26-cv-8452

CLASS ACTION

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Robert Sumrell ("Plaintiff"), by and through his undersigned attorneys, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Jaguar Land Rover North America, LLC ("Land Rover" or "Defendant"). Plaintiff makes the following allegations based upon knowledge as to his own respective acts, and upon information and belief, as well as upon his attorney's investigation, and alleges as follows:

## INTRODUCTION

1. Land Rover designed, manufactured, and sold to Plaintiff and consumers Mild Hybrid Electric Vehicles with defective DC/DC converters that can fail due to a fault in the boost control microchip (the "Defect"). A failure of the DC/DC converter can lead to complete loss of drive power and exterior lighting, increasing the risk of a crash and serious injury. The vehicles affected by the Defect include the 2020-2024 Land Rover Range Rover, 2019-2024 Land Rover Range Rover Sport, 2021-2024 Land Rover Range Rover Velar, 2020-2023 Land Rover Range Rover Evoque, 2021-2024 Land Rover Discovery, 2020-2024 Land Rover Defender, and 2020 Land Rover Discovery Sport ("Class Vehicles"). Land Rover has been aware of the existence of this defect for many years yet concealed it from unsuspecting consumers. Although Land Rover has recently admitted the existence of the Defect, it has failed to repair or replace Class Vehicles leaving drivers with unsafe vehicles in violation of state consumer protection and warranty laws.

2. Plaintiff, a purchaser of a defective Class Vehicle, now brings this class action on behalf of himself and other putative class members to recover damages, restitution, injunctive relief, and any other form of relief available at law or in equity.

## PARTIES

3. Plaintiff Robert Sumrell is an individual consumer who, at all times material hereto, was a citizen and resident of Illinois.

4. Defendant Jaguar Land Rover North America, LLC is incorporated in Delaware with its headquarters and principal place of business located at 100 Jaguar Land Rover Way, Mahwah, New Jersey, 07495. Defendant is the wholly owned American subsidiary of the international vehicle conglomerate Jaguar Land Rover Automotive PLC, a public limited company incorporated in the United Kingdom and headquartered in Whitley, Coventry, United Kingdom. Jaguar Land Rover Automotive PLC is the sole member of Jaguar Land Rover North America, LLC.

## **JURISDICTION AND VENUE**

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which some members of the Class are citizens of states different from Defendant. 28 U.S.C. § 1332(d)(2)(A). This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendant because it is domiciled in and conducts substantial business in the state of New Jersey, and because it has specifically marketed, advertised, and made substantial sales in New Jersey, and has sufficient minimum contacts with this state and/or sufficiently avails itself of the markets of this state through its promotion, sales, and marketing within this state to render the exercise of jurisdiction by this Court permissible.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is domiciled in and does substantial business in this District, has intentionally availed itself of the laws and markets within this District through its marketing, promotion, distribution, and sales

activities in this District, and a significant portion of the facts and circumstances giving rise to Plaintiff's Complaint occurred in this District.

## FACTUAL ALLEGATIONS

### A. Land Rover Manufactured and Sold Class Vehicles with Defective DC/DC Converters

8. Defendant Jaguar Land Rover North America, LLC is the United States and Canadian sales, marketing, and distribution subsidiary of the British luxury automotive manufacturer Jaguar Land Rover Automotive PLC. Headquartered in Mahwah, New Jersey, Defendant manages a network of over 330 retailers across the United States.

9. In late 2018 Defendant began selling Mild Hybrid Electric Vehicles (MHEVs). Land Rover officially introduced this technology to the market with the launch of the 2019 Range Rover Sport, which featured the brand's new inline-six Ingenium engine and a 48-volt MHEV system. Following this initial release, Defendant rapidly rolled out the MHEV technology across the rest of their lineups. Specific examples of early MHEV rollouts include the Range Rover Sport, Range Rover, and Range Rover Evoque in 2019/2020; the Land Rover Defender and Discovery Sport in 2020; and the Jaguar F-Pace, Jaguar E-Pace, and Range Rover Velar in 2021. The 48-volt system was designed to improve fuel efficiency and deliver smoother engine stop-start transitions.

10. Defendant's MHEVs rely on a 48-volt system and a conventional 12-volt system. The DC/DC converter bridges the two by stepping down the high-voltage power from the 48-volt hybrid battery to a lower 12-volt current. This 12-volt output is critical to continuously charge the vehicle's standard 12V battery and power all low-voltage cabin electronics, including headlights, infotainment, and essential engine control modules.

11. The boost control microchip in Defendant's MHEVs manages the switching and voltage regulation loops in the 48V-to-12V DC/DC converter.

12. An internal fault in Class Vehicles' boost control microchips can cause the DC/DC converter to fail. This prevents the 48V hybrid system from charging the 12V system, and the 12-volt battery rapidly depletes, triggering electrical faults, a complete and dangerous loss of drive power, and the failure of exterior lights and lane-keep assistance.

13. Land Rover has recently recalled over 170,000 MHEVs across its Jaguar and Land Rover lineups due to this specific component failure. However, the recall provides no repair, compensation, and does not remediate or eliminate the Defect. Accordingly, due to Land Rover's conduct, all Class Vehicles have suffered a diminished useful life and diminution in value.

**B. Land Rover Advertised Class Vehicles as Safe, Reliable, and Environmentally Conscious**

14. Land Rover advertises itself as a luxury brand delivering premium-priced, design-led luxury SUVs with real off-road capability. It sells its vehicles at selective retail, flagship showrooms, that cater to private experiences. Land Rover's target market is typically affluent professionals, entrepreneurs, executives, and legacy-wealth households who value discretion and craftsmanship.[1]

15. Defendant traded on its globally recognized luxury identity to market and advertise Class Vehicles. For example, Land Rover's web site advertises Class Vehicles with statements such as: "Guided by more than 50 years of evolution, Range Rover embodies an aesthetic grace that remains uninfluenced by fashions and trends. Forever underpinned by peerless refinement and

---

[1] https://digitalagencynetwork.com/range-rover-marketing-strategy/ (last accessed July 1, 2026).

breathtaking modernity enabled by the latest technologies,"[2] and "An air of sophistication. A flawless example of our modernist design philosophy."[3]

16. In addition to cultivating a mystique of elevated design and craftsmanship, Land Rover advertises Class Vehicles as being safe and reliable. For example, Land Rover advertises the Defender's reliability as "one of the reasons why this Land Rover SUV has earned such a stellar reputation. J.D. Power & Associates have determined that the overall Defender reliability rating is 78 out of 100 . . . . As for the Defender safety, . . . EuroNCAP has awarded the Defender a perfect 5-star safety rating in previous testing. Whether you are cruising the streets of Jersey City or heading out on your next weekend getaway, the Defender safety and reliability will serve you well."[4] "The reliability of the Defender hinges on its solid build quality and wide array of advanced safety features. You can rest assured that the Defender safety and driver assist systems will keep you and your passengers safe and secure . . . . Check out some of the important Defender safety features offered on the 2024 model: • Emergency Braking • Blind Spot Assist • 3D Surround Camera • Adaptive Cruise Control • Lane Keep Assist • Rear Traffic Monitor • 360° Parking Aid • Traffic Sign Recognition and Adaptive Speed Limiter • ClearSight ground view camera • Wade Sensing • Six airbags including driver and passenger, side curtain and thorax • Perimetric Alarm • Rain-Sensing Windshield Wipers • Dynamic Stability Control • Hill Descent Control • And more!"

17. Land Rover posts press releases on its website touting the Class Vehicles' five-star safety rating. For example, on November 16, 2022, Land Rover announced that "The New Range Rover and Range Rover Sport have both been awarded maximum five-star ratings in the latest

---

[2] https://www.rangerover.com/en-us/range-rover/index.html (last accessed July 2, 2026).
[3] https://www.rangerover.com/en-us/range-rover-velar/index.html (last accessed July 2, 2026).
[4] https://www.landroverparamus.com/defender-safety-rating/ (last accessed July 2, 2026).

Euro NCAP safety tests. The luxury SUVs draw on more than 50 years of expertise in delivering exceptional breadth of all-terrain capability, refinement and safety."[5] "The new models are the latest in a long line of Range Rovers to gain a five-star rating under the stringent Euro NCAP star rating safety protocols introduced in 2009, stretching back to the Evoque in 2011."[6]




[5] https://media.landrover.com/news/2022/11/range-rover-and-range-rover-sport-awarded-five-star-euro-ncap-safety-ratings (last accessed July 2, 2026).
[6] *Id*.




18. Recognizing that electrification represented one of the most significant growth opportunities, Defendant's marketing tactics also increasingly speak to environmentally conscious consumers.[7] Defendant marketed the new hybrid engines in its Class Vehicles as consistent with its reputation for design and engineering excellence:

> Land Rover's all-new 3.0 liter Ingenium In-Line 6 Gasoline MHEV (and a 2.0L turbocharged 4-cylinder MHEV) combines performance-boosting technologies and a new electric powertrain to enhance power and refinement while improving efficiency. The silky smooth and the super responsive Ingenium engine has an innovative combination of advanced features, including the introduction of an electric supercharger to deliver immediate power

[7] https://digitalagencynetwork.com/range-rover-marketing-strategy/ (last accessed July 1, 2026).

> response. Able to spool fully in just 0.5 seconds at up to 65,000rpm to maximum boost pressure, the new technology virtually eliminates turbo lag so it's ready when you are![8]

19. Land Rover touted the power output, torque, and improved carbon and emissions efficiency of the Class Vehicles' use of MHEV systems: "The newest member of the Ingenium engine family uses advanced technologies to reduce weight, deliver more power, provide superior fuel efficiency and lower emissions." "ELECTRIC SUPERCHARGER Uses a compressor driven directly by a 48v electric motor to increase boost pressure almost instantly, enhancing the torque curve at low RPM for superior engine response." "MILD HYBRID ELECTRIC VEHICLE (MHEV) Mild Hybrid 48v system equips the engine with an electric set-up capable of harvesting energy on the move and providing torque assistance to the engine during stop/start while delivering improved $CO_2$ emissions and fuel economy."[9]

---

[8] https://tinyurl.com/bdf7jhbv (last accessed July 2, 2026).
[9] https://tinyurl.com/bdf7jhbv (last accessed July 2, 2026).




20. In addition, Land Rover touted a seamless driving experience enabled by its hybrid technology: "The power to go anywhere. With pioneering innovation at your fingertips, explore places a Range Rover could take you with confidence, composure and comfort."[10] "FAST. ANYWHERE. Assertive on-road performance. Commanding all-terrain capability."[11] "MILD HYBRID The New Range Rover Evoque introduces Land Rover's first 48V mild hybrid electric vehicle, showcasing an efficient electrified powertrain designed for urban driving, delivering lower $CO_2$ emissions and a more refined driving experience."[12]

---

[10] https://www.rangerover.com/en-us/range-rover/index.html (last accessed July 2, 2026).
[11] https://www.rangerover.com/en-us/range-rover-sport/index.html (last accessed July 2, 2026).
[12] https://tinyurl.com/bdf7jhbv (last accessed July 2, 2026).

21. Land Rover highlighted the DC/DC converters at the heart of the Defect as a key facet of Land Rover's MHEV technology: "CONVERTER The DC/DC converter provides power to the 48V and 12V system to support battery charging and ancillaries."[13]




22. Despite Land Rover's claims of the Class Vehicles' advanced technology and efficiency, they were found to contain a dangerous Defect in which the DC/DC Converters can fail, leading to complete loss of drive power and exterior lighting and increasing the risk of a crash.

---

[13] https://tinyurl.com/bdf7jhbv (last accessed July 2, 2026).

### C. Land Rover Received Thousands of Consumer Complaints About the Defect Beginning in July 2019

23. Defendant itself reported receiving "5,952 claims and field reports involving replacement of the DCDC converter in the US between July 2019 and April 2026."[14]

24. Consumers have also made complaints directly to the U.S. Department of Transportation's National Highway Traffic Safety Administration ("NHTSA") about the defect as early as 2020. It is routine for vehicle manufacturers to monitor NHTSA complaints, which are often also submitted directly to the manufacturer as warranty claims, and Land Rover was therefore aware of consumer complaints to NHTSA regarding the Defect.

25. On July 3, 2020, a consumer in Arizona filed a complaint with NHTSA that on March 25, 2020, their 2020 Range Rover Velar "BASICALLY SHUT DOWN WHILE RUNNING. IT STARTED TO SHAKE AND THAN JUST POWERED DOWN, TWICE. . . ."[15]

---

[14] https://static.nhtsa.gov/odi/rcl/2026/RCLRPT-26V248-5125.pdf (last accessed June 29, 2026).
[15] https://www.nhtsa.gov/?nhtsaId=11337356 (last accessed July 2, 2026). Customer complaints quoted herein have not been edited for spelling, punctuation, or grammar.

JULY 3, 2020 NHTSA CAMPAIGN NUMBER: 11337356

**Components: ENGINE, FUEL/PROPULSION SYSTEM**

**NHTSA ID Number:** 11337356
**Incident Date:** March 25, 2020
**Consumer Location:** GILBERT, AZ
**Vehicle Identification Number:** SALYB2EX8LA******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

THE CAR BASICALLY SHUT DOWN WHILE RUNNING. IT STARTED TO SHAKE AND THAN JUST POWERED DOWN, TWICE. ACCORDING TO THE DEALERSHIP THERE IS AN ISSUE WITH THE "PURGE SYSTEM" THEY OLD ME THE VEHICLE WAS RELEASED TO EARLY . THERE IS AN ISSUE WITH THE SOFTWARE AND MANAGEMENT SYSTEM. THE CAR IS UNSAFE TO DRIVE . WHEN THE CAR POWERED DOWN I WAS AT A RED LIGHT INCHING FORWARD, THE CAR STARTED TO SHAKE AND THE RED BATTERY LIGHT CAME ON. I TURNED EVERYTHING OFF AND WAS ABLE TO MOVE FORWARD BUT ONLY SLIGHTLY AND THE CAR POWERED DOWN AGAIN ( I ALSO CAUSED A SMALL ACCIDENT BEHIND ME) THE CAR ALWAYS FELT LIKE IT WAS WORKING HARD TO ACCELERATE AND FELT LIKE IT WAS "STICKING" . IN SPEAKING WITH THE SERVICE TEAM AT RANGE ROVER THE VELAR IN GENERAL HAS HAD ISSUES AND THE SERVICE DEPARTMENT CANT KEEP UP. THE CAR ISN'T SAFE AND I'VE BEEN TOLD IT MAY NEED TO GO BACK IN EVEN AFTER THE REPAIR.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER VELAR | 2020 |

26. On September 8, 2020, a consumer in Florida filed a complaint with NHTSA that on September 7, 2020, while driving their 2020 Defender "AT HIGH SPEEDS ON AN INTERSTATE, THE BATTERY WARNING LIGHT ACTIVATED. . . . THE VEHICLE WOULD NOT ACCELERATE AND I WAS FORCED TO PULL OVER. FOLLOWING THIS, THE VEHICLE WOULD NOT ACTIVATE WHATSOEVER. ALL POWER WAS LOST. I COULD NOT SHIFT GEAR."[16]

[16] https://www.nhtsa.gov/?nhtsaId=11353875 (last accessed July 2, 2026).

SEPTEMBER 8, 2020 NHTSA CAMPAIGN NUMBER: 11353875

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11353875
**Incident Date:** September 7, 2020
**Consumer Location:** WINDERMERE, FL
**Vehicle Identification Number:** SALEP7EU3L2******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

WHILE DRIVING MY VEHICLE AT HIGH SPEEDS ON AN INTERSTATE, THE BATTERY WARNING LIGHT ACTIVATED. BEFORE I WAS ABLE TO PULL THE VEHICLE OVER THE AIR CONDITIONER I'LL PROBABLY BEGIN TO STOP WORKING. FOLLOWING THIS, A SERIES OF MULTIPLE WARNING LIGHTS ACTIVATED. THE VEHICLE WOULD NOT ACCELERATE AND I WAS FORCED TO PULL OVER. FOLLOWING THIS, THE VEHICLE WOULD NOT ACTIVATE WHATSOEVER. ALL POWER WAS LOST. I COULD NOT SHIFT GEAR. THE CAR REQUIRED A TOW TO THE LOCAL DEALERSHIP.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | DEFENDER | 2020 |

27. On December 7, 2020, a consumer in New York filed a complaint with NHTSA that on September 1, 2020, their "POWERS DOWN ENTIRELY ABOUT 50% OF TIME WHEN I OUT IT IN PARK . . . BTW, I DON'T MEAN IDLING DOWN WHICH IT IS SUPPOSED TO DO, IT SHUTS OFF. DEALER HAS REFUSED TO DO ANYTHING. IT HAS BEEN IN SHOP 4 TIMES AND THEY SAY THEY CANNOT DUPLICATE THE PROBLEMS . . . ."[17]

[17] https://www.nhtsa.gov/?nhtsaId=11378363 (last accessed July 2, 2026).

DECEMBER 7, 2020 NHTSA CAMPAIGN NUMBER: 11378363

**Components: ELECTRICAL SYSTEM, UNKNOWN OR OTHER, LANE DEPARTURE**

**NHTSA ID Number:** 11378363
**Incident Date:** September 1, 2020
**Consumer Location:** NEW YORK, NY
**Vehicle Identification Number:** SALYK2EX7LA******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

I IMMEDIATELY HAD PROBLEMS WITH ELECTRICAL. WARNING SYSTEMS INTERMITTENTLY NOT FUNCTIONING PROPERLY, SCREEN RANDOMLY CHANGING DURING DRIVING AND DEFAULTING TO SETTINGS THAT REQUIRE ME TO PULL OVER, STOP CAR AND RESTART AS IN REBOOTING A COMPUTER. LANE KEEP ASSIST INTERMITTENT. BRIGHTS INTERMITTENT. CAR POWERS DOWN ENTIRELY ABOUT 50% OF TIME WHEN I OUT IT IN PARK...EVEN WITHOUT TAKING SEATBELT OFF. MAP WILL SUDDENLY SWITCH TO ENTRY SCREEN ASKING ME TO SIGN IN WHEN I ALREADY HAVE AND LISTS ADDRESSES I'VE NEVER BEEN TO. THIS HAPPENS WHILE DRIVING. ALL HAPPENS WHILE DRIVING, PARKING OR TURNING EXCEPT OF COURSE THE POWERING DOWN IN PARK. BTW, I DON'T MEAN IDLING DOWN WHICH IT IS SUPPOSED TO DO, IT SHUTS OFF. DEALER HAS REFUSED TO DO ANYTHING. IT HAS BEEN IN SHOP 4 TIMES AND THEY SAY THEY CANNOT DUPLICATE THE PROBLEMS EVEN THOUGH I HAVE VIDEOTAPE AND PHOTOGRAPHS AND WITNESSES.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER VELAR | 2020 |

28. On August 2, 2021, a consumer in Virgina filed a complaint with NHTSA that on June 10, 2021, their new 2021 Range Rover Sport "suddenly stop in the middle of the road with a gearbox faulted message, I can't move a car from the park to neutral or drive mode. The local Sheriff had to call the towing guy to move a car from the road as it was in the middle of the road." The consumer reported two more such incidents on June 26 and August 1, 2021.[18]

[18] https://www.nhtsa.gov/?nhtsaId=11427540 (last accessed July 2, 2026).

AUGUST 2, 2021 NHTSA CAMPAIGN NUMBER: 11427540

**Components: POWER TRAIN, UNKNOWN OR OTHER**

**Incident Date:** June 10, 2021

**Consumer Location:** CHANTILLY, VA

**Vehicle Identification Number:** SALWR2SU2MA******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

Incident 1 I purchase my vehicle from Jaguar Land Rover Rosenthal Chantilly VA, a new Range Rover sport( one of the top-line models of Range Rover 100K+) , and it's just 5 months only 3000 miles. One day (Thursday, Jun 10) car suddenly stop in the middle of the road with a gearbox faulted message, I can't move a car from the park to neutral or drive mode. The local Sheriff had to call the towing guy to move a car from the road as it was in the middle of the road. I drop the car at Worst Jaguar Land Rover Rosenthal Chantilly Dealership on the East Coast. Chantilly VA ( based on my experience). I left a car on Thursday night in heavy rain, Friday morning I call them, visited the dealership to explain the problem, show the car to a service technician. There was problem with dealership but let's ignore that & focus on car issue. I complain to corporate range rover, I am not sure what they did but just politely communicate with me. They said that they fix the recall and do something, In car report which does not describe anything than regular inspection.. They created CASE:[8000897250 Second incident - On Jun 26, Saturday – around 2 pm issue happen again, I was driving Loudoun county parkway North, going toward Route 50 ( John mosby hwy ) from my home on Freedom street. Car stop suddenly. Same issue again.. Third Incident - On Aug 1st Sunday, 3:35 pm I was driving on route 50 E going to Fairfax VA from my home, at intersection near South riding Blvd., car stop suddenly, From drive to sudden stop with gearbox fault message. I am really in situation where I feel stress every time I drive car. Car only has 4000 mile, every month I am paying large lease amount, so I don't drive, I am losing money every month. I really went to mental stress and harassment because of these incidents. My family was really scare sitting in the car what if it stop suddenly and someone hit from back because of sudden stop. I have video and pic taken from dashboard.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER SPORT | 2021 |

29. On December 19, 2021, a consumer filed a complaint with NHTSA that their 2021 Range Rover Evoque would "stop while driving."[19]

[19] https://www.nhtsa.gov/?nhtsaId=11444341 (last accessed July 2, 2026).

DECEMBER 19, 2021 NHTSA CAMPAIGN NUMBER: 11444341

**Components: ENGINE**

**NHTSA ID Number:** 11444341
**Incident Date:** December 19, 2021
**Consumer Location:** Unknown
**Vehicle Identification Number:** SALZT2FX5MH******
**Summary of Complaint**

**Crash:** **No** Car stop while driving.

**Fire:** **No**

**Injuries:** **0**

**Deaths:** **0**

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| LAND ROVER | RANGE ROVER EVOQUE | 2021 |

30. On March 19, 2022, a consumer in California filed a complaint with NHTSA that their 2021 Range Rover Sport "suddenly lost power, while driving in a rural area of Interstate 5 in northern California when the vehicle lost power, I was unable to see anything at all and had to pull to the shoulder unsure of what was on the shoulder."[20]

[20] https://www.nhtsa.gov/?nhtsaId=11457433 (last accessed July 2, 2026).

MARCH 19, 2022 NHTSA CAMPAIGN NUMBER: 11457433

**Components: POWER TRAIN, ELECTRICAL SYSTEM, EXTERIOR LIGHTING**

**Incident Date:** March 19, 2022
**Consumer Location:** REDDING, CA
**Vehicle Identification Number:** SALWR2SE0MA******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

I was driving the car on March 11th 2022, at around 10pm when the car suddenly lost power, while driving in a rural area of Interstate 5 in northern California when the vehicle lost power, I was unable to see anything at all and had to pull to the shoulder unsure of what was on the shoulder. Dash display stated "headlight detected" and the vehicle shut off. Everything was off including, power, lights, engine, and the vehicle was unresponsive for 30 minutes. After about 30 minutes, the car started up and I decided to drive it. Furthermore, after about 1.5 miles the issue repeated and the car shut off again. Car was off for about 5 minutes, at this point I decided not to drive the car as I felt it was dangerous. The night of March 11th, the vehicle was towed to the nearest Land Rover/Range rover dealership and was diagnosed on Monday the 14th. The dealership diagnosed the vehicle with a defective battery. The battery was replaced and I was assured that the technician was certain the issue is resolved, and they have experienced it with other Range rover sports in the past year. I picked up the vehicle on March 16, 2022. Today, March 19, 2022, while driving the vehicle around 1pm the vehicle, the dashboard displayed "headlight fault detected" and the vehicle was once again shut off, including all the electronics. I do not consider this incident to be as dangerous as it was during daylight and near my house. However, the earlier incidents were very hazardous as it occurred at night, with no vehicle lighting or street lighting in an unfamiliar area. I am not confident driving this vehicle at all, as it could lose power at any moment. Thankfully in this time, the vehicle was in a safe area, but this incident could certainly have happened in the middle of a turn, in an area with no shoulder, or in a construction zone. All of which would dramatically increase the risk of significant injury.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER SPORT | 2021 |

31. On April 5, 2022 a consumer in North Carolina filed a complaint with NHTSA that their 2022 Range Rover Sport "SHUT OFF WHILE BEING DRIVEN. THE WINDSHIELD

WIPERS, HEADLIGHTS, AND COMPUTER SCREEN ALL SHUT OFF AS WELL[]" while consumer was driving 60 miles per hour.[21]

APRIL 5, 2022 NHTSA CAMPAIGN NUMBER: 11459724

**Components: ENGINE**

**NHTSA ID Number:** 11459724
**Incident Date:** April 5, 2022
**Consumer Location:** PINEHURST, NC
**Vehicle Identification Number:** 99999999999******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

2022 RANGE ROVER SPORT DYNAMIC. CONSUMER WRITES IN REGARDS TO ENGINE FAILURE. THE CONSUMER STATED THE VEHICLE SHUT OFF WHILE BEING DRIVEN. THE WINDSHIELD WIPERS, HEADLIGHTS, AND COMPUTER SCREEN ALL SHUT OFF AS WELL. THE CONSUMER WAS BEING DRIVEN 60 MPH WHEN THE FAILURE OCCURED. THE DASH DISPLAYED "START STOP FAULT INDICATED".

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER SPORT | 2022 |

32. On October 30, 2023, a consumer in Connecticut filed a complaint with NHTSA that on October 23, 2023, while performing a left turn, their 2020 Range Rover "stopped during the turn and then lurched forward. The car then became inoperable and would not go into gear."[22]

---

[21] https://www.nhtsa.gov/?nhtsaId=11459724 (last accessed July 2, 2026).
[22] https://www.nhtsa.gov/?nhtsaId=11552605 (last accessed July 2, 2026).

OCTOBER 30, 2023 NHTSA CAMPAIGN NUMBER: 11552605

**Components: POWER TRAIN**

**NHTSA ID Number:** 11552605
**Incident Date:** October 23, 2023
**Consumer Location:** STAMFORD, CT
**Vehicle Identification Number:** SALGS4RY2LA******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

Stopped on main road to perform a left turn, car stopped during the turn and then lurched forward. The car then became inoperable and would not go into gear. Gear selector was not available and car kept cutting out. I could not move the vehicle out of traffic and I had to sit in moving traffic with my hazard lights flashing. Husband came and sat in the car, waited 15 mins, started the car and overruled the car allowing him to move the car off the road and out of moving traffic.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER | 2020 |

33. On December 18, 2024, a consumer in Maryland filed a complaint with NHTSA that their 2020 Range Rover's "brakes failed to function while I drove. I almost hit the car in front of me." This was because "the auxiliary battery failed. . . . . I believe there is a serious design flow because the low voltage of the auxiliary battery should not have caused the brake booster to malfunction while I drove."[23]

[23] https://www.nhtsa.gov/?nhtsaId=11631410 (last accessed July 2, 2026).

DECEMBER 18, 2024 NHTSA CAMPAIGN NUMBER: 11631410

**Components: POWER TRAIN, SERVICE BRAKES**

**NHTSA ID Number:** 11631410
**Incident Date:** December 2, 2024
**Consumer Location:** CLARKSBURG, MD
**Vehicle Identification Number:** SALGS4RYXLA******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

the brakes failed to function while I drove. I almost hit the car in front of me. the brake booster was not functioning. the engine check light appeared suddenly, but with that other messages too, and also that was safe to continue to drive with caution. Just to mention two more messages that appeared on the display were: Stability control not available and Hill descent Control not available. I had to press extremely hard to break the car and of course I had to drive very slowly. I was cough of guard and almost hit a car in front of me at the traffic light. afterwards I just drove very slowly to my house. I checked the errors on my car and did research (I did not go to the dealership because they just extort money from you). I found out that the auxiliary battery failed. I replaced the battery and reset the system and the new battery information and that fixed the issue. I read on the Land Rover forums similar experience from many owners of this car. I believe there is a serious design flow because the low voltage of the auxiliary battery should not have caused the brake booster to malfunction while I drove. Just to mention that this auxiliary battery is an additional battery, (it looks like a motorcycle battery) and the main one is still healthy. And this is a hybrid (PHEV) car. Lots of source of energy to power important modules in the car which should not depend on the small auxiliary battery. Plus, the engine was running, meaning the alternator should be enough to power the modules that failed. I was very scared and happy that it was not my wife who drove the car. I have a report that was generated by the diagnostic tool that I use. A lot of errors popped up during that scary drive home. I attached the report I recorded from my diagnostic tool.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| LAND ROVER | RANGE ROVER | 2020 |

34. On February 16, 2025, a consumer in Vermont filed a complaint with NHTSA that on January 31, 2025, while driving their 2020 Land Rover Evoque "suddenly slowed and did not respond to the gas pedal."[24]

[24] https://www.nhtsa.gov/?nhtsaId=11643001 (last accessed July 2, 2026).

FEBRUARY 16, 2025 NHTSA CAMPAIGN NUMBER: 11643001

**Components: POWER TRAIN, ENGINE, FUEL/PROPULSION SYSTEM**

**NHTSA ID Number:** 11643001
**Incident Date:** January 31, 2025
**Consumer Location:** BARRE, VT
**Vehicle Identification Number:** SALZL2FX0LH******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

While driving on [XXX] on [XXX] from Burlington VT airport to Barre VT, the vehicle suddenly slowed and did not respond to the gas pedal. This was at about 5 pm. Managed to get the vehicle to the small curb but was partly in the right lane of highway. Many cars veered around us. Felt could easily have been hit from behind. Vehicle finally started after several tries and got it to a larger curb area. No warning lights came one before the stall, until just beforehand. Flashing lights then briefly lighted. Got vehicle towed to a repair shop that only kept it for several days and restarted several times. Then, had it towed to a Land Rover dealer in Bedford, NH, where it has been now for several days. They drove it and the problem recurred. Still no word on what happened. The vehicle has 26,000 miles and was purchased new in May of 2020. All required service was done by Land Rover dealers. No accidents. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER EVOQUE | 2020 |

35. On March 4, 2025, a consumer in Arizona filed a complaint with NHTSA that on February 18, 2025, while driving their 2020 Discovery Sport "independently decelerated and lost motive power."[25]

[25] https://www.nhtsa.gov/?nhtsaId=11646289 (last accessed July 2, 2026).

MARCH 4, 2025 NHTSA CAMPAIGN NUMBER: 11646289

**Components: VEHICLE SPEED CONTROL, ENGINE**

**NHTSA ID Number:** 11646289
**Incident Date:** February 18, 2025
**Consumer Location:** TUCSON, AZ
**Vehicle Identification Number:** SALCL2FX1LH******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

The contact owns a 2020 Land Rover Discovery Sport. The contact stated while driving at an undisclosed speed, the accelerator pedal was depressed; however, the vehicle failed to accelerate as intended. The vehicle independently decelerated and lost motive power. In addition, the check engine warning light was illuminated. The vehicle was not diagnosed or repaired by an independent mechanic or the dealer. The manufacturer was not made aware of the failure. The failure mileage was approximately 81,000.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | DISCOVERY SPORT | 2020 |

36. On December 30, 2025, a consumer in Connecticut filed a complaint with NHTSA that on December 29, 2025 that as they were driving their 2022 Range Rover Sport, "the car lost all power. The engine remained 'on', and the engine revved if I pushed the gas pedal, but there was zero acceleration."[26]

[26] https://www.nhtsa.gov/?nhtsaId=11707820 (last accessed July 2, 2026).

DECEMBER 30, 2025 NHTSA CAMPAIGN NUMBER: 11707820
Components: ELECTRICAL SYSTEM, FUEL/PROPULSION SYSTEM

**NHTSA ID Number:** 11707820
**Incident Date:** December 29, 2025
**Consumer Location:** STAMFORD, CT
**Vehicle Identification Number:** SALWR2SU0NA******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

As I was driving my vehicle to my residence, the car lost all power. The engine remained 'on', and the engine revved if I pushed the gas pedal, but there was zero acceleration. Fortunately I was able to maneuver/coast to a side street and stop my vehicle safely. I also felt fortunate that no car was following closely behind me which could have created a potential rear-end collision threat. I had very little warning that anything was wrong with the car. Approximately 20 minutes prior to the vehicle losing all power, I was driving to a store and parking in its parking lot. The vehicle warned me to not turn it off and the instrument panel showed a warning of 'Electrical Fault Detected'. Because the car gave me the message to not turn it off, I decided to drive home. I had no idea the car would suddenly lose all power. I still do not know what 'Elctrical Fault Detected' means. When I tried to investigate this fault, I was surprised to see that Land Rover Range Rover Sport models from 2023 and 2024 were recalled for this problem. My vehicle is a 2022, and I did not receive a recall notice.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER SPORT | 2022 |

37. On January 2, 2026, a consumer in Oregon reported that on April 4, 2025, "While driving my 2021 Land Rover Discovery (MHEV) in active traffic, the vehicle suddenly displayed an 'Electrical system fault – Stop safely' warning. Immediately after the warning, the vehicle lost power and shut down, leaving me stalled in traffic with no ability to safely move the vehicle out of the roadway."[27]

[27] https://www.nhtsa.gov/?nhtsaId=11708304 (last accessed July 2, 2026).

JANUARY 2, 2026 NHTSA CAMPAIGN NUMBER: 11708304

**Components: ELECTRICAL SYSTEM**

**Incident Date:** April 4, 2025

**Consumer Location:** GRANTS PASS, OR

**Vehicle Identification Number:** SALRT4RU1M2******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

While driving my 2021 Land Rover Discovery (MHEV) in active traffic, the vehicle suddenly displayed an "Electrical system fault – Stop safely" warning. Immediately after the warning, the vehicle lost power and shut down, leaving me stalled in traffic with no ability to safely move the vehicle out of the roadway. There was no prior warning, no gradual degradation, and no driver-caused condition. The shutdown appeared to be related to the 48-volt mild-hybrid electrical system, possibly involving the DC-DC converter or battery management system, which disabled critical vehicle functions. This failure created an immediate safety hazard. I was at risk of being rear-ended and had limited ability to safely exit traffic. The vehicle became effectively inoperable without warning, which is unacceptable in real-world driving conditions. What is especially concerning is that: •The warning instructed me to "stop safely," yet the vehicle did not allow time or power to do so •There were no visible issues beforehand •The issue appears consistent with known Land Rover MHEV electrical failures •Software updates were present, but did not prevent the failure A sudden electrical shutdown in traffic poses a serious safety risk to drivers, passengers, and others on the road. This issue should be investigated for potential defect, recall, or mandatory repair, as it compromises safe vehicle operation.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| LAND ROVER | DISCOVERY | 2021 |

38. On January 6, 2026, a consumer in Florida filed a complaint with NHTSA that on January 5, 2026, "while her husband was driving approximately 65 MPH" their 2020 Range Rover Sport "started to lose motive power. . . . The contact stated that the vehicle coasted to the side of the highway and stalled. The contact stated that her husband attempted several times before being able to restart the vehicle. The vehicle was driven to the destination; however, after returning to the vehicle, the vehicle failed to restart."[28]

[28] https://www.nhtsa.gov/?nhtsaId=11634402 (last accessed July 2, 2026).

JANUARY 6, 2025 NHTSA CAMPAIGN NUMBER: 11634402

**Components: FUEL SYSTEM, GASOLINE**

**NHTSA ID Number:** 11634402
**Incident Date:** January 5, 2025
**Consumer Location:** FORT LAUDERDALE, FL
**Vehicle Identification Number:** SALWR2SU5LA******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

The contact owns a 2020 Land Rover Range Rover Sport. The contact stated that while her husband was driving approximately 65 MPH, the vehicle started to lose motive power. The contact stated that her husband depressed the accelerator pedal; however, the vehicle failed to respond as needed. The contact stated that there was no warning light illuminated. The contact stated that the vehicle coasted to the side of the highway and stalled. The contact stated that her husband attempted several times before being able to restart the vehicle. The vehicle was driven to the destination; however, after returning to the vehicle, the vehicle failed to restart. The contact stated that the check engine warning light was illuminated. The vehicle was towed to a dealer and was diagnosed with fuel pump failure. The contact was informed that the fuel pump needed to be replaced. The vehicle was not repaired. The manufacturer was not informed of the failure. The failure mileage was approximately 46,000.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER SPORT | 2020 |

39. On January 8, 2026, a consumer in Tennessee filed a complaint regarding their 2020 Defender: "The DC/DC converter is failing on the vehicles regularly. This results in the vehicle losing power and shutting down while driving."[29]

[29] https://www.nhtsa.gov/?nhtsaId=11709603 (last accessed July 2, 2026).

JANUARY 8, 2026 NHTSA CAMPAIGN NUMBER: 11709603

**Components: STEERING, ELECTRICAL SYSTEM, ENGINE**

**NHTSA ID Number:** 11709603
**Incident Date:** January 8, 2026
**Consumer Location:** KNOXVILLE, TN
**Vehicle Identification Number:** SALE1EEU8L2******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

The DC/DC converter is failing on the vehicles regularly. This results in the vehicle losing power and shutting down while driving. I own this vehicle and while it hasn't happened yet, I constantly fear that it will. With the common knowledge and frequency of this occurrence, Land Rover should fix as a recall to ensure the safety of all customers. Please push for this. Thank you.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| LAND ROVER | DEFENDER | 2020 |

40. On January 21, 2026 a consumer in Idaho filed a complaint with NHTSA that on December 31, 2025 that when they were driving their 2022 Range Rover Sport, an "Electrical Fault Detected" warning came on and "[t]he car's instructions were to pull over as soon as possible, as the car's electrical system was draining the battery and the car could shut down within a few miles."[30]

30 https://www.nhtsa.gov/?nhtsaId=11712525 (last accessed July 2, 2026).

JANUARY 21, 2026 NHTSA CAMPAIGN NUMBER: 11712525

**Components: ELECTRICAL SYSTEM, ENGINE**

**Incident Date:** December 31, 2025

**Consumer Location:** KETCHUM, ID

**Vehicle Identification Number:** SALWR2SU7NA******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

I was driving when an "Electrical Fault Detected" warning came on. The car's instructions were to pull over as soon as possible, as the car's electrical system was draining the battery and the car could shut down within a few miles. We had the car towed to a repair shop where they ran tests on the car and replaced the battery. This did not fix the issue, and they came back a day later to find the brand new battery had drained. I then had it towed to another repair shop who replaced the alternator but that didn't solve the problem so they had it towed to the dealer. The dealer discovered that the DC converter in the car is bad, but said they have 5 cars in the shop with the exact same problem and the part is backordered without an ETA. I frequently drive late at night or early in the morning between a small town and a city for work. It's 100 miles each way, most of which is either in mountains with poor cell service or an interstate with a speed limit of 80 MpH. During this time of year, the temperatures in this area are often well below freezing. Had this issue happened on one of these drives, I could have very well been stranded with only a few minutes of warning with a high risk of hypothermia or even death. Had it happened on the interstate, the car would have lost complete power, including the steering, endangering not only my life, but my family and anyone else driving nearby. Land Rover has acknowledged in their notifications to dealer service departments that this is a known issue, but they have not issued a recall. I strongly believe this is a HUGE safety risk and that Land Rover should be held accountable for correcting this issue in all affected cars. They are endangering the lives of their customers and anyone who is on the road near Land Rover vehicles. NOTE: The doc provided in this submission is for an alternator change out that was done because of this electrical issue. The DC converter, which is where the true issue is, will be thousands as well.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| LAND ROVER | RANGE ROVER SPORT | 2022 |

41. On January 29, 2026, a consumer in New Jersey filed a complaint with NHTSA that on January 9, 2026 while driving their 2022 Range Rover Sport, the dash "had a Charging System Fault Detected warning light come on out of the blue. 5 mins late power steering was not

working, then out of nowhere the car died in the middle of a dangerous intersection. It had to be towed 25 miles to where it is under warranty."[31]

JANUARY 29, 2026 NHTSA CAMPAIGN NUMBER: 11714160

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11714160
**Incident Date:** January 9, 2026
**Consumer Location:** BERNARDSVILLE, NJ
**Vehicle Identification Number:** SALWR2SU8NA******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

My 2022 Range Rover Sport had a Charging System Fault Detected warning light come on out of the blue. 5 mins late power steering was not working, then out of nowhere the car died in the middle of a dangerous intersection. It had to be towed 25 miles to where it is under warranty. The DC convertor part s back ordered and there is no date for when it will be available. It has already been a month, with a prediction from the dealer of 4 to 6 more weeks, and no loaner available. It is happening to so many of the cars, they need to call a recall, it is so dangerous.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER SPORT | 2022 |

42. On February 6, 2026, a consumer in Ohio filed a complaint with NHTSA that their 2020 Range Rover "has been inoperable for over three months due to ongoing fault codes and software-related issues. . . . LR identified power distribution box resistor out of target range with resistance causing over-charging. This took a month and believe a software issue may have caused this as well as cannot happen on non-plug in. oReplacement of both the power distribution box and battery cost $1,471."[32]

[31] https://www.nhtsa.gov/?nhtsaId=11714160 (last accessed July 2, 2026).
[32] https://www.nhtsa.gov/?nhtsaId=11716208 (last accessed July 2, 2026).

FEBRUARY 6, 2026 NHTSA CAMPAIGN NUMBER: 11716208

## Components: ELECTRICAL SYSTEM, ENGINE, FUEL/PROPULSION SYSTEM

**NHTSA ID Number:** 11716208

**Incident Date:** November 25, 2025

**Consumer Location:** COLUMBUS, OH

**Vehicle Identification Number:** SALGS4RY6LA******

**Summary of Complaint**

**Crash:** No

**Fire:** No

**Injuries:** 0

**Deaths:** 0

I am filing this complaint regarding my 2020 Range Rover Full Size Plug-In Hybrid, which has been inoperable for over three months due to ongoing fault codes and software-related issues. The vehicle has been at an authorized Land Rover dealer for an extended period. The dealer has confirmed they are unable to proceed without direction or software updates from Jaguar Land Rover corporate engineering. For the last 60+ days, the issue has been repeatedly escalated between the dealer and corporate engineering with no actionable resolution, no repair authorization, and no clear timeline provided. I have even reached out customer relationship center file customer compliant which has not been responded to by LRNA/HQ. My case number is CASE:[XXX] Vehicle Background: •Vehicle would not charge beyond 80%. I scheduled an appointment with the local dealers to inspect. LR: Identified a coolant issue within the high voltage system. oRepair: We were able to get covered by LR per a service bulletin; however, the repair process took over a month. •November Subsequent issue: Check engine light appeared along with a "rotten egg" smell after charging. I returned the vehicle to the dealership. oRepair: LR identified power distribution box resistor out of target range with resistance causing over-charging. This took a month and believe a software issue may have caused this as well as cannot happen on non-plug in. oReplacement of both the power distribution box and battery cost $1,471. •December: Picked up the car and parked it for a week while out of town. The first week back I drove to work and the check engine light came on again. I have not yet received the vehicle back and it continues to throw powertrain codes. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6)

**1 Associated Product**

### Vehicle

| MAKE | MODEL | YEAR |
| --- | --- | --- |
| LAND ROVER | RANGE ROVER | 2020 |

43. On February 9, 2026, a consumer in Massachusetts stated that on January 5, 2026, while driving their 2022 Range Rover Sport, their "DC/DC converter completely failed on the highway" and "shut down immediately while driving."[33]



FEBRUARY 9, 2026 NHTSA CAMPAIGN NUMBER: 11716799

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11716799
**Incident Date:** January 5, 2026
**Consumer Location:** MIDDLETON, MA
**Vehicle Identification Number:** SALWR2SUXNA******
**Summary of Complaint**
**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

DC/DC converter completely failed on the highway. shut down immediately while driving.

1 Associated Product

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER SPORT | 2022 |

44. On February 19, 2026, a consumer in Massachusetts filed a complaint with NHTSA that on February 14, 2026, the "alternator on my [2021 Range Rover Sport] (DC to DC convertor) went while driving home with only one sensor prompting me to turn back around and head home to be safe. The car essentially died and power steering was lost."[34]

[33] https://www.nhtsa.gov/?nhtsaId=11716799 (last accessed July 2, 2026).
[34] https://www.nhtsa.gov/?nhtsaId=11719188 (last accessed July 2, 2026).

FEBRUARY 19, 2026 NHTSA CAMPAIGN NUMBER: 11719188

**Components: STEERING, ELECTRICAL SYSTEM, ENGINE**

**NHTSA ID Number:** 11719188
**Incident Date:** February 14, 2026
**Consumer Location:** FEEDING HILLS, MA
**Vehicle Identification Number:** SALWG2SU3MA******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

The alternator on my vehicle (DC to DC convertor) went while driving home with only one sensor prompting me to turn back around and head home to be safe. The car essentially died and power steering was lost. There were no prior warnings or indicators of an issue. I had 15 minutes to make it back home. The car died in intersection, luckily at corner of my street and folks had to help push it into the driveway. Having searched for a replacement, there are no after market options, no used options, and my mechanic was told we are customer 30,335 as THOUSANDS of owners are experiencing this very same problem. The estimate weight time for the part was 3 months, at the least. So, we are stuck with an invaluable car, sitting for three months, and forced to pay storage fees at the mechanic shop as well as keeping current on the monthly car payment.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER SPORT | 2021 |

45. On February 26, 2026, a consumer in New Jersey filed a complaint with NHTSA that on February 5, 2026, "while traveling at highway speeds" their 2020 Range Rover Sport "suffered a sudden and total loss of motive power (high-speed stall) without prior symptoms. . . . This failure occurred in active traffic, resulting in the immediate loss of power steering and electronic braking assistance, creating an imminent collision risk for the occupants and surrounding motorists. . . . The authorized dealer confirmed the failure of the DC-DC Converter."[35]

[35] https://www.nhtsa.gov/?nhtsaId=11720714 (last accessed July 2, 2026).

FEBRUARY 26, 2026 NHTSA CAMPAIGN NUMBER: 11720714

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11720714
**Incident Date:** February 5, 2026
**Consumer Location:** STRATFORD, NJ
**Vehicle Identification Number:** SALWR2SU8LA******

**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

While traveling at highway speeds, the vehicle suffered a sudden and total loss of motive power (high-speed stall) without prior symptoms. A "Charging System Fault" message appeared seconds before the engine and all critical electrical systems shut down. This failure occurred in active traffic, resulting in the immediate loss of power steering and electronic braking assistance, creating an imminent collision risk for the occupants and surrounding motorists. Component Failure: The authorized dealer confirmed the failure of the DC-DC Converter (original part LR176476), which regulates the 48V-to-12V charging cycle. The component is currently held by the dealer and available for inspection. The failure caused a secondary total depletion of the 12V battery, rendering the vehicle's safety lighting and hazard signals inoperable. Manufacturer Awareness: The dealer confirmed the original part has been discontinued and superseded by a revised design (Part 433123472) due to known defects. Furthermore, the dealer stated that multiple other vehicles are currently grounded at their location awaiting the same backordered safety component. There is currently no estimated time of arrival for the revised part, leaving the vehicle indefinitely sidelined due to a systemic manufacturing flaw.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER SPORT | 2020 |

46. On March 17, 2026, a consumer reported that on March 11, 2026, their 2020 Range Rover 's "DC/DC Converter failed completely without warning. It was towed to the Land Rover of Monmouth (NJ) where this failure was confirmed. The failure of the DC/DC converter resulted in the vehicle going completely "dead" while driving with my wife and children."[36]

[36] https://www.nhtsa.gov/?nhtsaId=11725005 (last accessed July 2, 2026).

MARCH 17, 2026 NHTSA CAMPAIGN NUMBER: 11725005

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11725005
**Incident Date:** March 11, 2026
**Consumer Location:** Unknown
**Vehicle Identification Number:** SALGS2RU4LA******

**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

On March 11, 2026, the vehicle's DC/DC Converter failed completely without warning. It was towed to the Land Rover of Monmouth (NJ) where this failure was confirmed. The failure of the DC/DC converter resulted in the vehicle going completely "dead" while driving with my wife and children. There was no warning. Fortunately for my family and I, it occurred on a side street by my home and did not occur on a highway or other busy road. Had this occurred on a highway or busy road, this would have absolutely put our lives in danger. As noted, the failure of the DC/DC converter was confirmed by the Land Rover of Monmouth (NJ) authorized dealership (I have a video from the dealership stating and confirming the failure). There were zero warnings at the time it occurred; it just lost power and shut down. Based on my research after this incident, it appears to be a pervasive problem with Land Rover and while there appear to be active recalls for certain Land Rover models, inexplicably, there is no current recall for this particular model. My wife and I are very concerned that even if/when it is repaired, this will happen again. This is the primary vehicle my wife uses for transportation with our young children and I am extremely afraid of the risk that this poses to their lives. I've notified the dealership from where I purchased it and was directed to contact Land Rover USA. I have not heard back from Land Rover USA. This well-documented, pervasive defect puts lives at risk and is extremely dangerous. As an attorney, I find Land Rover's knowledge of this frequent and extensive issue -- while only having a limited recall and not providing any information to owners of other Land Rover vehicles -- is a reckless disregard for the safety of others and creates an unreasonable risk of harm to others, like my family.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER | 2020 |

47. On March 25, 2026, a consumer in California reported that "On March 5, 2026, while I and my 2 passengers were traveling on the 405 Freeway at approximately 40–50 mph," the 2020 Range Rover Evoque "suffered a catastrophic total loss of power. The engine shut off and all electronic systems failed simultaneously, including the instrument cluster and all interior lighting.

Most critically, the hazard lights were inoperable, leaving the vehicle invisible to high-speed traffic during the failure."[37]

[37] https://www.nhtsa.gov/?nhtsaId=11726890 (last accessed July 2, 2026).

MARCH 25, 2026 NHTSA CAMPAIGN NUMBER: 11726890

**Components: ELECTRICAL SYSTEM, ENGINE, FUEL/PROPULSION SYSTEM**

**NHTSA ID Number:** 11726890
**Incident Date:** March 5, 2026
**Consumer Location:** GARDENA, CA
**Vehicle Identification Number:** SALZP2FX5LH******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

On March 5, 2026, while I and my 2 passengers were traveling on the 405 Freeway at approximately 40–50 mph, the vehicle suffered a catastrophic total loss of power. The engine shut off and all electronic systems failed simultaneously, including the instrument cluster and all interior lighting. Most critically, the hazard lights were inoperable, leaving the vehicle invisible to high-speed traffic during the failure. Since I was traveling at highway speeds I was able to safely glide the vehicle to the center shoulder. After approximately 10–15 minutes, the dashboard, infotainment, and climate control systems began flickering intermittently before power temporarily returned. Upon attempting to re-enter traffic to reach an exit, the vehicle stalled a second time while in motion. I returned to the shoulder again. After another 10 minutes the vehicle started and I was eventually able to exit the freeway and reach my residence. The following morning, the vehicle was completely unresponsive and would not start. It was towed to Land Rover Santa Monica dealership on March 6, 2026, where it currently remains for diagnosis and repair. This incident on the 405 freeway marks the third occurrence of a total loss of propulsion and electrical failure while the vehicle was in motion. Despite previous repair attempts, the defect persists, rendering the vehicle fundamentally unsafe for operation. I am gravely concerned for my personal safety, as well as the safety of other motorists on public streets and highways. A vehicle that spontaneously stalls at high speeds—while simultaneously losing the ability to activate hazard lights—presents an unacceptable risk of a high-speed rear-end collision. Given that this is a recurring, catastrophic safety failure, I am requesting an immediate and permanent resolution, as the vehicle in its current state is a liability to public safety and unsafe to be driven by me or anyone.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER EVOQUE | 2020 |

48. On April 23, 2026, a consumer filed a complaint with NHTSA that on November 9, 2025, their 2020 Range Rover experienced a "Loss of all driving power."[38]

---

[38] https://www.nhtsa.gov/?nhtsaId=11733374 (last accessed July 2, 2026).

APRIL 23, 2026 NHTSA CAMPAIGN NUMBER: 11733374

**Components: POWER TRAIN, UNKNOWN OR OTHER**

**NHTSA ID Number:** 11733374
**Incident Date:** November 9, 2025
**Consumer Location:** Unknown
**Vehicle Identification Number:** SALGS2RU2LA******

**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

Loss of all driving power. Gave fail code of Battery fail. We relpaced the battwry and still didnt work. Then were told we needed to replace the alternator. Replaced alternator and still failed. Now being told that we need to replace the dc dc converter...we have paid for the part but that part is on back order and we have now been without a vehicle for 6 months

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER | 2020 |

Copy Link to Information

49. On April 27, 2026, a consumer in Pennsylvania stated that on January 13, 2026 while driving their 2022 Range Rover Sport, “a red light came on and within 20 minutes my whole car, electronics and everything shut down on the turnpike and I could barely get off the road and was scared to death [i]t was completely DEAD.”[39]

[39] https://www.nhtsa.gov/?nhtsaId=11734166 (last accessed July 2, 2026).

APRIL 27, 2026 NHTSA CAMPAIGN NUMBER: 11734166

**Components: POWER TRAIN, ELECTRICAL SYSTEM, EXTERIOR LIGHTING**

**NHTSA ID Number:** 11734166
**Incident Date:** January 13, 2026
**Consumer Location:** EMPORIUM, PA
**Vehicle Identification Number:** SALWR2SU7NA******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

As I was driving along a red light came on and within 20 minutes my whole car , electronics and everything shut down on the turnpike and I could barely get off the road and was scared to death It was completely DEAD. I had to call Turnpike assistance and a flatbed Tow truck loaded up my car and it was taken to a dealership I had to have the MHEV DC/DC converter replaced and at an extremely huge cost of 2321.78. In Wayne PA

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER SPORT | 2022 |

50. On June 1, 2026, a consumer in South Carolina filed a complaint with NHTSA that on April 26, 2026, their 2020 Range Rover Evoque "experienced hybrid system failure, electrical failure, charging system failure, loss of drive power, electrical shutdown, and loss of exterior lighting at a busy intersection, while at a red light. My vehicle had to be towed and was confirmed by the Range Rover dealership as a DC-DC converter failure. My 73 yr old mother and I had to get out and direct traffic for over two hours, to keep my vehicle from getting hit or us being seriously injured, until a wrecker arrived."[40]

---

[40] https://www.nhtsa.gov/?nhtsaId=11741193 (last accessed July 2, 2026).

JUNE 1, 2026 NHTSA CAMPAIGN NUMBER: 11741193

**Components: POWER TRAIN, ELECTRICAL SYSTEM, EXTERIOR LIGHTING**

**NHTSA ID Number:** 11741193
**Incident Date:** April 26, 2026
**Consumer Location:** BLYTHEWOOD, SC
**Vehicle Identification Number:** SALZL2GX8LH******

**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

On 4/26/2026 My vehicle experienced hybrid system failure, electrical failure, charging system failure, loss of drive power, electrical shutdown, and loss of exterior lighting at a busy intersection, while at a red light. My vehicle had to be towed and was confirmed by the Range Rover dealership as a DC-DC converter failure. My 73 yr old mother and I had to get out and direct traffic for over two hours, to keep my vehicle from getting hit or us being seriously injured, until a wrecker arrived. I had previously took my vehicle to two dealerships, when I had a light to come on. They told me to keep driving until they researched the problem and that my vehicle would not leave me on side of the road. Approximately 2 weeks later is when it displayed another warning light, right before shutting off completely on the above date and having me stopped, not on the side of the road, but worse, at a red light busy intersection off a highway ramp. I found out by the dealership that my vehicle issue is part of an active DC/DC converter recall. My husband and I had to pay for the costly repairs, towing and have been out of a vehicle, with no loaner for over a month. I am requesting a "recall reimbursement","goodwill reimbursement" and "pre-remedy reimbursement eligibility."

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | RANGE ROVER EVOQUE | 2020 |

51. On June 4, 2026, a consumer in California filed a complaint with NHTSA that their "2021 Land Rover Discovery 48V mild hybrid (MHEV)" suffered from "Recurring 12V system failures: repeated depleted/dead 12V batteries and no-start events."[41]

[41] https://www.nhtsa.gov/?nhtsaId=11742136 (last accessed July 2, 2026).

JUNE 4, 2026 NHTSA CAMPAIGN NUMBER: 11742136

**Components: ELECTRICAL SYSTEM**

**NHTSA ID Number:** 11742136
**Incident Date:** January 20, 2026
**Consumer Location:** WOODLAND HILLS, CA
**Vehicle Identification Number:** SALRM4RU9M2******
**Summary of Complaint**

**Crash:** No
**Fire:** No
**Injuries:** 0
**Deaths:** 0

2021 Land Rover Discovery 48V mild hybrid (MHEV). Recurring 12V system failures: repeated depleted/dead 12V batteries and no-start events. The 12V battery has failed and been replaced three times during my ownership (two documented at a franchised Land Rover dealer and an independent shop), plus a prior replacement under the previous owner per the vehicle history report. Symptoms: the vehicle will not start without a jump, repeated low-battery and SOS/telematics warnings, blank infotainment display, and full battery depletion after the vehicle sits unused for as little as 3 days, even with a battery maintainer in use. Dealer cloud diagnosis confirmed two contributing faults. First, elevated parasitic/quiescent current draw from control modules not entering proper sleep state, measured at 1.6A versus a normal value near 0.01A. Second, inadequate 12V charging. The dealer replaced the 12V and telematics backup batteries and applied software updates to multiple modules (including TCU and BCM), yet the failures recurred. This VIN has an open safety recall on MHEVs (NHTSA 26V-248, manufacturer D126) describing a DCDC converter internal fault that causes loss of 12V system charging and a "Stop Safely, Electrical Fault Detected" warning, with potential loss of motive power, coasting to a stop, and loss of exterior lighting. The remedy is not yet available. Safety risk: loss of 12V charging and battery depletion can cause stalling, loss of motive power in traffic, no-start and stranding, and loss of lighting, all of which increase crash risk. On one occasion the vehicle barely started after sitting at an airport lot, nearly leaving my family stranded. The problem has been reproduced and confirmed by both a franchised dealer and an independent service center. The vehicle and the failed batteries are available for inspection on request. Warning messages first appeared before the current failure and have recurred across multiple battery replacements.

**1 Associated Product**

**Vehicle**

| MAKE | MODEL | YEAR |
|---|---|---|
| LAND ROVER | DISCOVERY | 2021 |

**D. Land Rover Knew of the Defect Without Disclosing It**

52. Land Rover had knowledge of the Defect but withheld and concealed the existence of the Defect from Plaintiff and the Class Members for *seven* years since it received the first

consumer complaints beginning in July 2019. In addition, Defendant appointed a dedicated committee and task force to study and review the Defect since at least September 2024.

53. According to documents Defendant filed with NHTSA, "Following an increase in the number of warranty claims received for DCDC converter failure globally, JLR's Product Safety and Compliance Committee (PSCC) reviewed the matter in September 2024."[42] Defendant, however, claims that at the time, "[i]t was concluded, given the gradual progression of symptoms experienced by the customer, that the issue did not pose an unreasonable risk to safety."[43]

54. Nevertheless, reports of DC/DC Converter failures kept piling on until, over a year after the PSCC review, Land Rover was finally compelled to create "a dedicated engineering task force . . . to understand the potential causes of the replacements and to focus on ensuring a robust resolution for JLR's customers."[44]

55. This task force dithered for the next six months while Land Rover allowed dangerously defective Class Vehicles to remain on the streets. Land Rover reported to NHTSA, "From November 2025, on resumption of system access following a cyber incident, to March 2026, this task force continued working daily on the complex topic, including conducting hardware-in-the-loop testing, physical testing and virtual simulation. The task force reported regularly into JLR's Quality Forums."[45]

56. Land Rover, however, continued to conceal the existence of the Defect until NHTSA finally compelled it to issue a safety recall.

---

[42] https://static.nhtsa.gov/odi/rcl/2026/RCLRPT-26V248-5125.pdf (last accessed June 29, 2026).
[43] *Id.*
[44] *Id.*
[45] *Id.*

**E. Land Rover Finally Issued a Recall of the Defective Class Vehicles**

57. It wasn't until "reviews were held with a number of government agencies," and NHTSA forced Land Rover's hand, "clarifying the Agency's view of the matter to be one of a safety nature rather than customer satisfaction," that Land Rover finally capitulated to issue a recall in April 2026, *over a year and a half* after Land Rover's initial PSCC review of the Defect and *seven years* after the first consumer complaints.[46]

58. On April 17, 2026, Land Rover issued a Part 573 Safety Recall Report to NHTSA affecting the Class Vehicles.[47] The report stated 170,169 Class Vehicles were potentially involved in the Defect, with all 100% estimated to have the Defect which can and will create serious safety hazards for occupants, other unsuspecting drivers, and pedestrians at any time. The report stated that "Jaguar Land Rover is conducting a voluntary safety recall campaign involving certain [Class Vehicles]. The basis of the recall population of vehicles was determined to be Mild Hybrid Electric Vehicles (MHEVs) up until the introduction of a revised specification of DCDC converter" and identified nine categories of Class Vehicles by model year, make, and model.

59. The Part 573 Safety Recall Report identifies the Defect: "A concern has been identified on Jaguar and Land Rover Mild Hybrid Electric Vehicles (MHEVs) where the DCDC converter can fail due to an internal fault in the boost control microchip."[48] It further identifies "the safety risk, including crash, fire, death, injury":

---

[46] *Id.* Even now, Land Rover is only proceeding with a safety recall "in markets where the authority's assessment of the issue is similar to that expressed by the Agency," choosing to remedy Class Vehicles in other markets "under a Quality campaign." *Id.*
[47] https://static.nhtsa.gov/odi/rcl/2026/RCLRPT-26V248-5125.pdf (last accessed June 29, 2026).
[48] *Id.*

> A failure of the DCDC converter will result in a loss of 12V system charging, and a "Stop Safely Electrical Fault Detected" red warning. Should the customer ignore this warning and continue to drive, additional warnings may appear. Continuation of the journey will result in the vehicle losing motive power and coasting to a stop after a period of time, and eventually losing exterior lighting. A loss of motive power, or of vehicle lighting, will increase the risk of a crash.[49]

60. The Part 573 Safety Recall Report also identified the involved components as DC/DC Converters manufactured by LG Innotek in Poland.[50]

61. The Safety Recall Report states that "JLR's engineering task force is working to develop a robust remedy for this concern and notifications will be updated once this activity is concluded," but that "[t]he corrective repair action is not yet defined. An update will be provided in due course."[51] "The remedy is not yet defined therefore this detail is not yet known."[52]

62. On April 17, 2026, NHTSA simultaneously issued a recall campaign noting that Land Rover would be "recalling certain 2021-2024 Land Rover Range Rover Velar and Land Rover Discovery, 2020-2023 Land Rover Range Rover Evoque, 2019-2024 Land Rover Range Rover Sport, 2020-2024 Land Rover Range Rover, 2020 Land Rover Discovery Sport, 2020-2024 Land Rover Defender, 2021-2024 Jaguar F-Pace, and 2021-2022 Jaguar E-Pace mild-hybrid

---

[49] *Id.*
[50] *Id.*
[51] *Id.*
[52] *Id.*

electric vehicles (MHEVs.)"[53] NHTSA reaffirmed that "The DC-DC converter can fail due to an internal fault in the boost control microchip. A failure of the DC-DC converter will result in a loss of 12-Volt system charging and can lead to complete loss of drive power and exterior lighting."[54]

63. Media reports of the recall began to appear in industry reports in late April, 2026. On April 24, 2026, Car and Driver reported Land Rover was recalling 170,169 vehicles that could lose drive power and exterior lighting, relating to an issue in the 48-volt hybrid system's DC-DC converter, which stops the 12-volt system from charging, eventually resulting in a loss of motive power. [55] On April 27, 2026, tflcar.com reported that Land Rover was conducting a safety recall due to a potential DC converter failure within that could lead to a loss of drive power and exterior lighting because the DC/DC Converter failure could keep the 12-volt electrical system from properly charging.[56]

64. On April 29, 2026, Land Rover issued Administration Bulletins for Safety Related Recall, for the attention of Defendant's approved retailers and authorized repairers, subject, "DCDC Converter Failure Leading to Loss of Propulsion," listing the Class Vehicles, describing the Defect, and instructing Retailers/authorized repairers to "Quarantine affected new vehicles that are within your control and refrain from releasing the vehicles for new vehicle sale pending completion of the rework action. Affected vehicles already with customers should be updated at

---

[53] https://www.nhtsa.gov/?nhtsaId=26V248000 (last accessed June 29, 2026).
[54] *Id.*
[55] https://www.caranddriver.com/news/a71122681/jlr-170000-suv-hybrid-system-failure-recall/ (last accessed June 29, 2026).
[56] https://tflcar.com/2026/04/jaguar-land-rover-recall-loss-of-drive-power-news/ (last accessed June 29, 2026).

the next available opportunity. JLR recommends that affected sales demonstrator and loaner vehicles are repaired before use and that used vehicles are repaired before sale."[57]

65. Land Rover would not issue notifications to dealers until May 2026, and owner notifications until June, 2026.

66. On June 10, 2026, Defendant began issuing interim "Important Safety Recall" notices to consumers.[58] These notices effectively told consumers to sit and wait until Land Rover figures out what the repair process is going to be.

**F. Land Rover's Recall Fails to Provide an Adequate or Complete Remedy**

67. Land Rover's April 17, 2026, Part 573 Report stated, "The remedy is not yet defined therefore this detail is not yet known."[59] NHTSA's campaign says the same: "The remedy for this recall is currently under development . . . . Additional letters will be sent once the remedy is available."[60]

68. The April 22, 2025 letter from NHTSA also admitted that the remedy for the Recall was still under development, and additional letters would be sent once the remedy was available. To date Land Rover has neither sent additional letters nor identified any remedy for the Recall.

---

[57] https://static.nhtsa.gov/odi/rcl/2026/RCSB-26V248-6554.pdf (last accessed July 2, 2026); https://static.nhtsa.gov/odi/rcl/2026/RCSB-26V248-0098.pdf (last accessed July 2, 2026).
[58] https://static.nhtsa.gov/odi/rcl/2026/RIONL-26V248-3568.pdf (Last accessed July 2, 2026); https://static.nhtsa.gov/odi/rcl/2026/RIONL-26V248-8329.pdf (last accessed June 29, 2026).
[59] https://static.nhtsa.gov/odi/rcl/2026/RCLRPT-26V248-5125.pdf (last accessed June 29, 2026).
[60] https://www.nhtsa.gov/?nhtsaId=26V248000 (last accessed June 29, 2026).

69. Industry reports echoed the fact Land Rover has no remedy to offer. Tflcar.com reported that Land Rover does not currently have a permanent remedy for the issue.[61] Car and Driver reported "There's currently no timeline for when remedy notification letters are planned."[62]

70. The April 29, 2026, Administration Bulletins reaffirmed that "recall repair procedures and any required parts and/or software are not currently available. This recall repair campaign will be published when all repair procedures and all required parts and/or software are available."[63] The Administration Bulletins do note that Land Rover had fixed the problem in production while owners of Class Vehicles remain left in the lurch: "Newer vehicles have updated hardware and software in the DC/DC converter."[64]

71. The Administration Bulletins contain confusing and contradictory instructions. For example, Land Rover stated that "We have not issued a 'stop-drive' instruction in this case," while at the same time advising, "We strongly recommend that you do have your car repaired, and there is a risk to your safety, and the safety of others, if you do not."[65] The Administration Bulletins advised consumers, "if you receive a red warning on your dashboard please note that the handbook states you must pull over as soon as it is safe to do so, and seek qualified assistance. If you receive a red warning and continue to drive, the resulting repair may be more time-consuming and invasive," and "You are advised to be aware of warnings presented on the screen, and stop the

---

[61] https://tflcar.com/2026/04/jaguar-land-rover-recall-loss-of-drive-power-news/ (last accessed June 29, 2026).
[62] https://www.caranddriver.com/news/a71122681/jlr-170000-suv-hybrid-system-failure-recall/ (last accessed June 29, 2026).
[63] https://static.nhtsa.gov/odi/rcl/2026/RCSB-26V248-6554.pdf (last accessed July 2, 2026); https://static.nhtsa.gov/odi/rcl/2026/RCSB-26V248-0098.pdf (last accessed July 2, 2026).
[64] *Id.*
[65] *Id.*

vehicle safely when instructed to do so. You will be contacted directly by JLR and are advised to book your vehicle in for repair as soon as possible when the remedy becomes available."[66] Plaintiff and Class Members are therefore advised to continue driving their defective Class Vehicles until the Defect manifests and their car loses power in the middle of traffic, exposing them and the public to unacceptable risks.

72. Land Rover's June 10, 2026, interim "Important Safety Recall" notices likewise provide no timeline for when a repair process will be announced—"The remedy for this recall is currently under development. When the repair process and any necessary parts or software are available you will receive a 2nd notification letter."[67] Consumers are merely advised to look for a "Stop Safely, Electrical Fault Detected" warning, and "If you receive this red warning on your dashboard please pull over as soon as it is safe to do so, and seek qualified assistance." Again, Plaintiff and Class Members are stuck with defective vehicles and the specter of their cars losing power while driving on a crowded street or freeway.

**G. Land Rover Breached Its Express Warranties**

73. In addition to the warranties and representations contained in its advertising, Land Rover provides limited warranties as part of the sale of Class Vehicles ("Limited Warranty"). According to Land Rover's website, "Every new Land Rover vehicle is covered by a New Vehicle Limited Warranty for 4 years or 50,000 miles, whichever comes first. Each vehicle also carries a six-year/unlimited-mileage corrosion perforation warranty, plus various emissions warranties."[68]

---

[66] *Id.*
[67] https://static.nhtsa.gov/odi/rcl/2026/RIONL-26V248-3568.pdf (Last accessed July 2, 2026); https://static.nhtsa.gov/odi/rcl/2026/RIONL-26V248-8329.pdf (last accessed June 29, 2026).
[68] https://www.landroverusa.com/ownership/vehicle-warranty.html (last accessed July 2, 2026).

74. The Limited Warranty "covers any factory-supplied component of the Land Rover vehicle that is defective during the basic warranty period . . . ."[69]

75. For Jaguars, "The new vehicle limited warranty and roadside assistance coverage for your Jaguar car is extended to 5 years or 60,000 miles, whichever occurs first."[70]

76. The Limited Warranty provides that "if any part or accessory needs to be repaired or replaced, the work will be carried out by a Jaguar Authorized Retailer, free of charge."[71] And, "This Warranty covers every genuine part or accessory purchased from a Jaguar Retailer."

77. Consumers who purchased pre-owned Class Vehicles are also beneficiaries of the Limited Warranty: "Jaguar Limited Warranty Coverage is fully transferable to subsequent owners and remains in effect during the new vehicle limited warranty coverage period."[72]

78. In addition, Defendant provides owners with the option to extend the coverage of its limited warranties. "Jaguar Vehicle Protection Plan allows you to benefit from continuing peace of mind after your existing new vehicle limited warranty expires. If you own a Jaguar car with 1,000 miles AND 30 days remaining of the new vehicle limited warranty and would like to maintain the reassurance and protection against unexpected repair costs, please contact your local authorized Jaguar Retailer for the Jaguar Vehicle Protection Plan."[73] Consumers who waived their option to purchase this coverage would have acted differently had they known of the Defect and

---

[69] https://topix.landrover.jlrext.com/topix/service/document/598222 (last accessed July 2, 2026).
[70] https://www.jaguar.com/en-us/jdx/ownership/service-warranties/limited-warranty.html (last accessed July 2, 2026).
[71] https://www.jaguar.com/en-us/jdx/ownership/service-warranties/parts-accessories-warranty.html (last accessed July 2, 2026).
[72] https://www.jaguar.com/en-us/jdx/ownership/service-warranties/limited-warranty.html (last accessed July 2, 2026).
[73] https://www.jaguar.com/en-us/jdx/ownership/service-warranties/limited-warranty.html (last accessed July 2, 2026).

the dangerous nature of their Class Vehicle's DC/DC Converter.

79. In addition to breaching its implied warranties with consumers by deceptively marketing and selling Class Vehicles that were never merchantable for providing safe, reliable transportation, Defendant faced a deluge of customer complaints and requests for warranty repairs and refunds. Defendant responded with startling inaction, first concluding the Defect "did not pose an unreasonable risk to safety," before allowing it's "engineering task force" to twiddle its thumbs for over a year and a half before regulators had to step in to force Land Rover to recall the defective Class Vehicles.[74]

80. Even now that the recall has commenced, there is neither a remedy in sight, nor even a timeline of when one will become available. Instead, Plaintiff and Class Members are left with nothing but Land Rover's assurance that a remedy is "currently under development." Accordingly, due to Land Rover's conduct, all Class Vehicles have suffered a diminished useful life and diminution in value.

81. Meanwhile the clock is running out on many Class Members' warranty rights.

**H. Land Rover Actively Concealed Material Information from Consumers**

82. Defendant purposefully withheld from consumers that the Class Vehicles were fundamentally defective, and that it would not and could not comply with its warranty obligations. Defendant actively withheld all of this material information from consumers so that it could continue to sell its remaining supply of defective Class Vehicles and resolve the production issue for new products coming off the line.

83. Defendant exclusively knew of the Defect in the Class Vehicles soon after they hit

---

[74] https://static.nhtsa.gov/odi/rcl/2026/RCLRPT-26V248-5125.pdf (last accessed June 29, 2026).

the market due to the high level of customer complaints and because of internal corporate investigation into the Defect. Land Rover received thousands of complaints about the Defect beginning the year the Class Vehicles hit the market in 2019. Then, Land Rover's September 2024 PSCC review specifically investigated, but decided to downplay the Defect. Land Rover's 2024 efforts to resolve the defect in the production of new vehicles, and the testing and other activities of its "engineering task force" also evidence Defendant's superior knowledge of the Defect.

84. Despite its exclusive knowledge, Defendant withheld and concealed the existence of the Defect from Plaintiff and the Class Members until June 2026, *seven* years since it received the first consumer complaints, and one year and nine months since Defendant's PSCC review.

85. As a direct and proximate result of Defendant's conduct, consumers purchased Defendant Class Vehicles they would not have otherwise purchased, paid more for Defendant Class Vehicles than they would have otherwise paid, waived their rights to extend their warranties or opt in to additional coverage, and have been subject to an increased safety risk because they purchased faulty vehicles that were defective and not suitable for the purpose for which they were sold. Due to Land Rover's conduct, all Class Vehicles have suffered a diminished useful life and diminution in value. Defendant's conduct has violated consumer protection and warranty laws, and buyers are accordingly entitled to damages, restitution, and injunctive relief.

## **PLAINTIFF'S EXPERIENCES**

86. In May 2026 Plaintiff Sumrell purchased a pre-owned 2023 Land Rover Range Rover Velar with 45,965 miles, vehicle identification number SALYT2EU3PA360488, from Advantage Acura of Naperville in Naperville, Illinois for a purchase price of $33,300.00. Prior to purchase, Plaintiff Sumrell viewed Defendant's marketing materials for the Class Vehicle and was aware of Defendant's Limited Warranty, which he understood would be included in his purchase.

87. Plaintiff Sumrell began experiencing problems with his Class Vehicle soon after he purchased it, and within the warranty period. Among other problems, Plaintiff Sumrell has experienced power system failures during which his Class Vehicle will stop running while he is driving or fail to auto-start while he is stopped in traffic, forcing him to turn the vehicle off and then on again to regain power. In addition, Plaintiff Sumrell's Class Vehicle will display dashboard warning lights that turn on and then turn off without explanation, and various low-voltage electronic systems in his Class Vehicle do not function properly.

88. Had Plaintiff Sumrell known prior to purchase that the Class Vehicle suffered from the Defect, was defective and unmerchantable for providing reliable, safe transportation, and that Defendant would not honor its warranty obligations, he would not have purchased the Class Vehicle or would have paid less for it. Plaintiff Sumrell has been harmed as a result of Defendant's conduct because, among other things, he relied on Defendant's deceptive marketing, he purchased an expensive Class Vehicle he would not have otherwise purchased and/or paid more for the Class Vehicle than he would have otherwise paid. As a result, Plaintiff Sumrell's Class Vehicle has suffered a diminished useful life and diminution in value. Plaintiff Sumrell has been harmed by Defendant because he ended up with a vehicle that was not merchantable and fit for the ordinary purpose it was intended to serve. Plaintiff Sumrell has also subjected himself to an increased safety risk because he does not have a fully operable vehicle, when, had he known material information Defendant failed to disclose, he could have purchased a properly operating vehicle from another manufacturer. Plaintiff Sumrell was also denied the benefits of his warranties with Defendant and under applicable law.

## CLASS ACTION ALLEGATIONS

89. Pursuant to Rule 23(a), (b)(2), and (b)(3), Plaintiff brings this action on behalf of

himself, and others similarly situated.

90. Plaintiff seeks to represent a Nationwide Class, defined as: All persons in the United States who purchased or leased a Class Vehicle within the applicable statute of limitations (the "Class").

91. In the alternative, Plaintiff seeks to represent an Illinois Subclass, defined as: All persons in Illinois who purchased or leased a Class Vehicle in Illinois within the applicable statute of limitations (the "Subclass").

92. A "Class Vehicle" is defined as a vehicle manufactured and sold by Land Rover with a defective DC/DC converter, including the following vehicle years and models: 2020-2024 Land Rover Range Rover, 2019-2024 Land Rover Range Rover Sport, 2021-2024 Land Rover Range Rover Velar, 2020-2023 Land Rover Range Rover Evoque, 2021-2024 Land Rover Discovery, 2020-2024 Land Rover Defender, and 2020 Land Rover Discovery Sport.

93. Excluded from the Class and Subclass are (i) Defendant, any entity in which a Defendant has a controlling interest or which has a controlling interest in any Defendant, and Defendant's legal representatives, predecessors, successors and assigns; (ii) Defendant's employees, officers, directors, agents, and representatives and their family members; (iii) governmental entities; (iv) counsel for Plaintiff herein and any member counsel's immediate families; and (v) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

94. Plaintiff also reserves the right to seek additional subclasses of persons as appropriate on each of Plaintiff's causes of action.

95. Plaintiff brings this action as a putative class action pursuant to Federal Rule of Civil Procedure 23 because there are common questions or law and fact among the claims of

Plaintiff and absent Class Members,[75] because there are thousands of potential Class Members so that it would be impracticable, if not impossible, for each of them to file individual actions, and because through this litigation Plaintiff may obtain benefits for himself and the absent Class Members in one proceeding.

96. Members of the Class and Subclass are so numerous that joinder is impracticable. Defendant sold hundreds of thousands of Class Vehicles in the United States, and Defendant has records of these sales and the owners.

97. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class and Subclass Members include:

a. Whether Defendant's advertising and other public statements about the Class Vehicles were false and misleading;

b. Whether Defendant misrepresented and/or failed to adequately disclose that Class Vehicles suffered from the Defect;

c. Whether the cost of the Class Vehicles was falsely inflated by Defendant's promises that the Class Vehicles were safe and reliable when in fact they were not;

d. Whether Defendant's conduct was unfair, deceptive, and/or misleading under applicable law;

e. Whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for it to retain the benefits conferred upon Defendant by Plaintiff and

[75] Members of the Class and Subclass are referred to collectively herein as "Class Members" unless otherwise stated.

the Class and Subclass;

f. Whether Defendant breached its express and/or implied warranties to Plaintiff and the Class and Subclass;

g. Whether Plaintiff and the Class and Subclass have sustained damages with respect to the claims asserted, and if so, the proper measure of their damages; and

h. Whether Defendant has violated the state consumer protection laws alleged in this complaint.

98. Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased and used, in a typical consumer setting, Defendant's Class Vehicles, and Plaintiff sustained damages from Defendant's wrongful conduct.

99. Plaintiff will fairly and adequately protect the interests of the Class and Subclass and have retained counsel that is experienced in litigating complex consumer protection class actions. Plaintiff has no interests which conflict with those of the Class or the Subclass.

100. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

101. The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, thereby making appropriate equitable relief with respect to the Class and Subclass as a whole.

102. The prosecution of separate actions by members of the Class and Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.

## TOLLING OR NON-ACCRUAL OF STATUTES OF LIMITATION

103. Any applicable statutes of limitations have been tolled or have not run because

Defendant knowingly, actively, and fraudulently concealed the facts as alleged herein. Defendant had actual and constructive knowledge of the wrongful courses of action alleged in this Complaint. Plaintiff and Class Members have been kept in ignorance of information essential to the pursuit of their claims, without any fault or lack of diligence on their part. Plaintiff and Class Members reasonably relied upon Defendant to perform its duties to provide legally required disclosures about Defendant Class Vehicles and to comply with its warranty obligations. Defendant's concealment of these facts before, during, and after the purchases of Class Members' Class Vehicles prevented them from being on notice of any facts or information that would have required them to inquire whether Defendant fulfilled its duties under the law and, if not, whether Plaintiff and Class Members had legal recourse.

104. At all times prior to, during, and since the purchase of Plaintiff's and Class Members' Class Vehicles, Defendant has been under a continuing duty to disclose the true facts regarding the Class Vehicles. Because of Defendant's willful concealment of material information concerning the Class Vehicles over a period of years, Defendant is estopped from relying on any statute of limitations defense as to the claims of the members of the Class. To the extent Defendant asserts that it provided any notices or disclosures regarding the Class Vehicles' to Class Members, whether in correspondence or otherwise, any such disclosures were incomplete, misleading, and were designed and drafted with the intent to induce reliance and inaction on the part of Class Members to prevent them from asserting their legal rights.

105. Plaintiff did not discover the facts constituting Defendant's unlawful conduct until dates within the limitations period governing this action. Plaintiff is not at fault for not having knowledge of the unlawful conduct that Defendant has perpetrated given Defendant's extensive efforts over the course of many years, including years subsequent to his purchase, to conceal

material information about the Class Vehicles and its intentions to breach its warranties. Accordingly, any statutes of limitations governing Plaintiff's and Class Members' claims should be tolled.

## FIRST CAUSE OF ACTION

### Violations of the New Jersey Consumer Fraud Act N.J. Stat. § 56:8-1 *et seq.*

### On Behalf of Plaintiff and the Class

106. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

107. Plaintiff, Class Members, and Defendant are all "persons" within the meaning of the New Jersey Consumer Fraud Act. Defendant's Class Vehicles were directly offered to the public for sale and constitute "merchandise" within the meaning of the New Jersey Consumer Fraud Act.

108. Defendant's acts or omissions, as alleged herein, constitute an unlawful practice that occurred in connection with the sale and or advertisement of merchandise, within the meaning of Section 56:8-2 of the New Jersey Consumer Fraud Act that prohibits "the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise" and "[t]he act, use or employment by any person of any … false pretense, false promise, [and] misrepresentation … in connection with the sale or advertisement of any merchandise …"

109. Defendant violated the New Jersey Consumer Fraud Act by, among other things, among other things:

a. Designing, manufacturing, marketing and selling Class Vehicles to consumers that contained material, fundamental defects without disclosing such defects to

consumers;

b. Marketing and selling Class Vehicles that were not merchantable for the purpose of providing reliable and safe transportation;

c. Marketing and selling Class Vehicles while concealing material facts from Plaintiff and Class Members regarding the defects in the Class Vehicles that would manifest both within and outside their express or implied warranty periods that would create a safety risk for Plaintiff and Class Members who purchased the Class Vehicles;

d. Concealing from Class Members that Defendant was in breach and intended to breach its warranty obligations by, among other things: (1) selling defective Class Vehicles (2) failing to replace customers' vehicles' defective DC/DC Converters with non-defective parts, software, or systems in a timely manner while warranty periods lapsed; (3) misleading customers that a recall remedy was in development and their Class Vehicles' problems would be fixed with upcoming hardware and software fixes that may never materialize or actually work; and (4) failing to provide appropriate non-defective replacement vehicles, reimbursements, compensation, refunds, and/or applicable damages;

e. Violating additional laws, as set forth herein; and

f. Breaching its express and implied warranties with Class Members as set forth herein.

110. On information and belief, Defendant's misrepresentations, acts or omissions, as alleged herein, emanated from its headquarters and principal place of business in New Jersey. Defendant's personnel responsible for the design, advertising, and marketing of the Class Vehicles, as well as those responsible for investigating the Defect, working with regulators in responding to

the Defect, and implementing the recall of Class Vehicles, are all located in New Jersey.

111. The New Jersey Consumer Fraud Act is, by its express terms, a cumulative remedy such that its provisions can be awarded in addition to those provided under separate statutory schemes and/or common law remedies.

112. Under Section 56:8-19, Plaintiff Sumrell and the Class have suffered ascertainable losses and have been damaged by Defendant's conduct, entitling them to recover compensatory damages, restitution, disgorgement, refunds of moneys, interest, treble damages, punitive damages, reasonably attorneys' fees, costs of suit, and any and all relief that may be available in law or equity.

## SECOND CAUSE OF ACTION

### Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS §§ 505, *et. seq.*)

### On Behalf of Plaintiff and the Illinois Subclass

113. Plaintiff incorporates by reference and re-alleges all prior paragraphs of this complaint as though fully set forth herein.

114. Plaintiff brings this claim individually and on behalf of members of the Subclass.

115. Defendant is a "person" as defined by 815 ILCS § 505/1(c).

116. Plaintiff and Subclass Members are "consumers" as defined by 815 ILCS § 505/1(e).

117. Defendant's conduct as described herein was in the conduct of "trade" or "commerce" as defined by 815 ILCS § 505/1(f). Defendant's conduct is described in full detail above.

118. Defendant engaged in unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false

pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact in violation of 815 ILCS § 505/2.

119. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

120. Defendant intended to mislead Plaintiff and Subclass Members and induce them to rely on its misrepresentations and omissions.

121. The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers could not reasonably avoid; this substantial injury outweighed any benefit to consumers or to competition.

122. Defendant acted intentionally, knowingly, and maliciously to violate Illinois's Consumer Fraud Act, and recklessly disregarded Plaintiff and Subclass Members' rights. Defendant's knowledge of the Defect in the DC/DC Converters installed in Class Vehicles put it on notice that the Class Vehicles were not as advertised.

123. As a direct and proximate result of Defendant's unfair, unlawful, and deceptive acts and practices, Plaintiff and Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their Class Vehicles.

124. Plaintiff and Subclass Members seek all monetary and non-monetary relief allowed by law, including damages, restitution, punitive damages, declaratory relief, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

**Violations of the Illinois Uniform Deceptive Trade Practices Act**
**(815 ILCS §§ 510/1, *et. seq.*)**

**On Behalf of Plaintiff and the Illinois Subclass**

125. Plaintiff incorporates by reference and re-alleges all prior paragraphs of this complaint as though fully set forth herein.

126. Plaintiff brings this claim individually and on behalf of members of the Subclass.

127. Defendant is a "person" as defined by 815 ILCS § 510/1(5).

128. Defendant engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS § 510/2(a), including:

a. Representing that goods or services have characteristics that they do not have;

b. Representing that goods or services are of a particular standard, quality, or grade if they are of another;

c. Advertising goods or services with intent not to sell them as advertised; and

d. Engaging in other conduct that creates a likelihood of confusion or misunderstanding.

129. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers.

130. The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

131. As a direct and proximate result of Defendant's unfair, unlawful, and deceptive trade practices, Plaintiff and Subclass Members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing their Class Vehicles.

132. Plaintiff and Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief, declaratory relief, and reasonable attorney's fees and costs.

## FOURTH CAUSE OF ACTION

### Breach of Express Warranty

### On Behalf of Plaintiff and the Class

133. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

134. Defendant was at all relevant times a merchant involved in the manufacturing, distributing, warranting, and/or selling of the Class Vehicles.

135. Plaintiff and the Class formed contracts with Defendant at the time they purchased their Class Vehicles. The terms of that contract include that the Class Vehicles would be free from "defects in materials and workmanship," and moreover include Defendant's claims that that the Class Vehicles were safe and reliable. In addition, the terms of the contract include that "[a]ny defects still present at the time the vehicle is delivered to you are covered by the warranty." This product advertising constitutes express warranties, became part of the basis of the bargain, and is part of a standardized contract between Plaintiff and the members of the Class, on the one hand, and Defendant, on the other.

136. Defendant breached the terms of these contracts, including the express warranties, by failing to provide Class Vehicles that provided the benefits advertised by Defendant—namely, that the Class Vehicles were safe, reliable and free from defects.

137. Any attempt by Defendant to disclaim or limit its express warranties is

unconscionable and unenforceable under the circumstances here. Defendant knew or should have known that the Class Vehicles were not safe and reliable due to the Defect in the DC/DC Converters; Defendant had unequal bargaining power and misrepresented the reliability, quality, performance, and qualities of the Class Vehicles; and any limited remedies unreasonably favor Defendant and fail Plaintiff's reasonable expectations concerning product performance.

138. Any purported warranty limitations excluding or limiting (a) labor and costs of labor and (b) incidental and consequential damages, are also procedurally and substantively unconscionable and thus fail under UCC § 2-302 and relevant state law.

139. Plaintiff and the Class Members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein. Plaintiff and the Class Members were not required to notify Defendant of the breach because it would have been futile.

140. As a direct and proximate cause of Defendant's breach, Plaintiff and Class Members bought Class Vehicles they otherwise would not have, overpaid for the Class Vehicles, did not receive the benefit of their bargain, and their Class Vehicles' suffered a diminution in value and Defendant has not offered an adequate remedy.

141. Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including damages, incidental and consequential damages, declaratory relief, and any other relief that is just and proper.

**FIFTH CAUSE OF ACTION**

**Breach of Implied Warranty of Merchantability**

**On Behalf of Plaintiff and the Class**

142. Plaintiff incorporates by reference and re-alleges each and every allegation set forth

above as though fully set forth herein.

143. Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

144. Defendant is a merchant with respect to products such as the Class Vehicles at issue.

145. In order to be merchantable, goods must conform to the promises or affirmations of fact made in the advertising of the product.

146. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

147. Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

148. Defendant is a merchant with respect to products such as the Class Vehicles at issue.

149. In order to be merchantable, goods must conform to the promises or affirmations of fact made in the advertising of the product.

150. Defendant breached the implied warranty of merchantability to Plaintiff and Class Members in its representations that the Class Vehicles were safe and reliable, when those representations were actually false.

151. As a result of Defendant's misleading conduct, Plaintiff and Class Members did not receive merchantable goods as impliedly warranted by Defendant.

152. Defendant did not exclude or modify the product's implied warranty of merchantability.

153. As a proximate result of Defendant's breach of its implied warranty, Plaintiff and Class Members incurred damages.

154. Plaintiff and Class Members were damaged as a result of Defendant's failure to

comply with its obligations under the implied warranty, since Plaintiff and the Class paid for the product, the Class Vehicles, that did not have the promised quality and nature, paid a premium for the Class Vehicles, when they could have instead purchased other less expensive products, and Plaintiff and Class Members lost the opportunity to purchase similar products that provided the capabilities advertised.

155. As a result of Defendant's breach of the implied warranty of merchantability, Plaintiff and the Class Members have been damaged in an amount to be determined at trial.

## JURY DEMAND

156. Plaintiff, on his own behalf and on behalf of all others similarly situated, hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests of this Court the following prayer for relief, on behalf of himself and Class Members:

A. An order certifying the Class and/or Subclass pursuant to Federal Rule of Civil Procedure 23 and appointing Plaintiff and his counsel to represent them;

B. An award of compensatory, actual, treble and punitive damages in an amount to be determined at trial;

C. Restitution and disgorgement of profits;

D. Awarding pre- and post- judgment interest;

E. Injunctive relief;

F. Declaratory relief;

G. Attorneys' fees, costs and expenses of suit, including expert witness fees; and

H. Such other relief as the Court may deem appropriate.

DATED: July 9, 2026

KAPLAN FOX & KILSHEIMER LLP

By: ____/s/ *Joel B. Strauss*_________

Joel B. Strauss
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: 212-687-1980
Facsimile: 212-687-7714
jstrauss@kaplanfox.com

William J. Pinilis
160 Morris Street
Morristown, NJ 07960
Telephone: 973-656-0222
Facsimile: 973-401-1114
wpinilis@kaplanfox.com

Laurence D. King (*pro hac vice* forthcoming)
Matthew B. George (*pro hac vice* forthcoming)
Clarissa R. Olivares (*pro hac vice* forthcoming)
Walter B. Howe (*pro hac vice* forthcoming)
1999 Harrison Street, Suite 1501
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
lking@kaplanfox.com
mgeorge@kaplanfox.com
colivares@kaplanfox.com
whowe@kaplanfox.com

*Attorneys for Plaintiff and the Proposed Class*